# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

LUIS PAGAN,
    *Plaintiff*,

    v.                                          No. 3:20-cv-00251 (JAM)

NICK RODRIGUEZ *et al.*,
    *Defendants*.

## INITIAL REVIEW ORDER PURSUANT TO 28 U.S.C. § 1915A

Plaintiff Luis Pagan is a sentenced prisoner in the custody of the Connecticut Department of Correction ("DOC"). He has filed this lawsuit *pro se* and *in forma pauperis* against numerous DOC officials, principally alleging that they failed to protect him from assaults by other inmates and that they retaliated against him. I will allow some of his claims to proceed.

### BACKGROUND

The following facts are derived from the allegations in the complaint and the attached grievances and are accepted as true only for purposes of this ruling. Pagan names seventeen defendants in their individual and official capacities: Nick Rodriguez, Warden at Northern Correctional Institution ("Northern"); William Mulligan, Warden at Walker Correctional Institution ("Walker"); D. Roach, Deputy Warden at Walker; Keith Lizon, Captain/Unit Manager of the Security Risk Group ("SRG") Phase 1 unit at Northern; Molden, Deputy Warden at Northern; John Doe, Commissioner of Correction; T. Anderson, Lieutenant at Northern; Sean Guimond, Lieutenant at Northern; Mathew Prior, Lieutenant at Northern; Stanley, Counselor Supervisor/Unit Manager for the SRG Phase 2 unit at Walker; Cheney, Correction Officer/Intelligence Officer at Walker; Maldonado, District Administrator/Level 2 reviewer; Otero, Correction Officer at Northern; Sanchez, Correction Officer at Northern; Campbell,

Correction Officer at Northern; Fryer, Correction Officer at Northern; and Lopez, Correction Officer at Northern. Doc. #1 at 1-3. Pagan's official capacity claim against Commissioner Doe is now against Interim Commissioner Angel Quiros by way of automatic substitution. *See* Fed. R. Civ. P. 25(d); *D'Alessandro v. City of New York*, 713 F. App'x 1, 9 n.9 (2d Cir. 2017).

Pagan suffers from several mental illnesses including post-traumatic stress disorder, bipolar disorder, impulsive disorder, and personality disorder. Doc. #1 at 4. At all times relevant to the incident underlying this action, he was a sentenced prisoner on charges of robbery and assault on a correctional officer. *Id.* at 5 (¶ 1).

On June 28, 2017, Pagan was transferred to Northern and housed in Phase 1 of the Security Risk Group ("SRG") program. *Ibid.* (¶ 2). For one hour per day, five days per week, he was permitted to recreate in a small yard with seven other inmates, all of whom were handcuffed with their hands behind their backs. *Ibid.* (¶¶ 3-4). Being handcuffed behind his back impeded Pagan's ability to exercise and stretch and prevented him from defending himself if another inmate were to slip his handcuffs and attack Pagan. *Ibid.* (¶ 5). The practice caused Pagan to experience pain and discomfort and possible damage to his joints, nerves, and muscles. *Ibid.* (¶ 6).

On December 28, 2017, Pagan was assaulted in the SRG recreation yard when another inmate slipped his handcuffs and repeatedly struck Pagan on the head and face with a closed fist. *Id.* at 7 (¶ 16). With his hands behind his back, Pagan was unable to defend or shield himself, and he risked falling if he tried to run away. *Ibid.* (¶ 17). Pagan suffered bruising and swelling to the face and head, neck pain, and a minor concussion. *Id.* at 8 (¶ 19). He was taken to the medical unit where a cut to his eyebrow was sutured. *Ibid.* (¶ 20).

Pagan attempted informal resolution by submitting an inmate request to defendants Rodriguez, Molden, and Lizon, but they advised him to file a grievance challenging the handcuffing policy. *Ibid.* (¶ 21); *see also id.* at 35. On January 7, 2018, Pagan submitted a Level 1 grievance challenging the SRG Phase 1 handcuffing policy, and on February 13, 2018, Rodriguez denied the grievance, citing Administrative Directive ("AD") 6.14. *Id.* at 6 (¶¶ 7, 9); *see also id.* at 28-29. On February 17, 2018, Pagan filed a Level 2 appeal, and on March 7, 2018, defendant Maldonado denied the appeal. *Id.* at 7 (¶¶ 12-13); *see also id.* at 30. On March 20, 2018, Pagan filed a Level 3 appeal, and on May 4, 2018, defendant Commissioner Doe denied the appeal. *Id.* at 7 (¶¶ 14-15); *see also id.* at 30.

On December 28, 2017, while Pagan was in the infirmary at Northern, defendant Guimond stopped by to make harassing remarks. *Id.* at 8 (¶¶ 22-23). The next day, Pagan returned to his cell. *Id.* at 9 (¶ 24). Guimond stopped at Pagan's cell and again made harassing comments. *Ibid.* (¶ 25). Guimond also told other inmates that Pagan was a snitch. *Ibid.* (¶¶ 26-27). Guimond then told Pagan, "I got a message for you from R. Jones. He wants me to tell you GOTCHA." *Ibid.* (¶ 28). Pagan has a consecutive sentence of two years for assaulting Guimond and former correction officer Jones in 2010. *Ibid.* (¶¶ 28-29).

On January 8, 2018, Pagan filed a Level 1 grievance regarding Guimond's conduct, and on February 13, 2018, Rodriguez denied the grievance. *Id.* at 10 (¶ 30); *see also id.* at 37-38. On February 17, 2018, Pagan filed a Level 2 appeal, and on March 7, 2018, Maldonado denied the appeal. *Id*. at 10 (¶ 30); *see also id.* at 39.

Pagan learned from other inmates that the December 2017 attack had been prompted by rumors spread by Guimond, Anderson, and Prior. *Id.* at 10 (¶ 31). He submitted an inmate request to Lizon and Rodriguez regarding the rumors but received no response. *Ibid.* (¶ 32). On

February 1, 2018, Pagan filed a Level 1 grievance, and on March 8, 2018, Rodriguez denied the grievance. *Ibid.* (¶ 33); *see also id.* at 57-58. On March 6, 2018, he filed a Level 2 appeal, and on April 23, 2018, Maldonado denied the appeal. *Id.* at 10 (¶ 33); *see also id.* at 59.

On February 5, 2018, Guimond stopped at Pagan's cell and called him a snitch and made sexually explicit comments. *Id.* at 10 (¶ 34). Pagan submitted inmate requests to defendants Lizon and Molden regarding Guimond's conduct but received no response. *Ibid.* (¶ 36). On February 7, 2018, he filed a Level 1 grievance, and on March 13, 2018, Rodriguez denied the grievance. *Ibid.* (¶ 35); *see also id.* at 61. On March 17, 2018, Pagan filed a Level 2 appeal, and on April 4, 2018, Maldonado denied the appeal. *Id.* at 11 (¶ 35); *see also id.* at 62.

On February 21, 2018, Lizon told Pagan that there was a "keep away profile" between Pagan and Guimond as a result of the 2010 assault. *Ibid.* (¶ 37). But nothing was done to keep Guimond away from Pagan, and he continued to spread rumors that Pagan was a snitch, a rapist, and a homosexual. *Ibid.* (¶ 38). That same day, Pagan filed a Level 1 grievance, and on April 3, 2018, Rodriguez denied the grievance. *Ibid.* (¶ 39); *see also id.* at 64-65. On April 10, 2018, he filed a Level 2 appeal, and on June 5, 2018, Maldonado denied the appeal. *Id.* at 11 (¶ 39); *see also id.* at 66.

In August 2018, Pagan was transferred to Phase 2 of the SRG program at Walker. *Id.* at 11 (¶ 40). The rumors that Pagan was a snitch and a rapist had reached Walker. *Id.* at 12 (¶ 41). On September 16, 2018, Pagan was attacked by an SRG member in a small phone cage in the housing unit. *Ibid.* (¶ 42). The inmate who attacked Pagan gave a note to a correctional official, stating Pagan would continue to be attacked because he was a snitch and a rapist. *Ibid.* (¶ 43).

Pagan requested that the handheld video recording of the September 2018 attack be preserved because inmates could be heard on the recording calling Pagan a snitch and shouting

threats. *Id.* at 12-13 (¶ 46). On September 22, 2018, he submitted a request for preservation of the video surveillance footage of the attack, but defendants Roach and Stanley told him that there was no such footage, and the footage was not preserved. *Id.* at 13 (¶¶ 47-48).

On October 1, 2018, Stanley and another officer interviewed Pagan for protective custody placement, and Pagan told them that he feared for his life. *Id*. at 12 (¶¶ 44-45). On October 2, 2018, Pagan learned that Warden Mulligan had denied the request for protective custody placement and that he would be returned to Northern that day. *Id.* at 13 (¶ 50).

Before Pagan was returned to Northern, defendant Cheney, an intelligence officer, told Pagan that he knew before the September 2018 assault that SRG members would attack Pagan. *Id.* at 14 (¶¶ 52-53). He said that it would be safer for Pagan at Northern because he would continue to be a target at Walker. *Ibid.* (¶ 54). Cheney also told Pagan that certain SRG members had contact information for Pagan's loved ones and had tried to call them. *Ibid.*

On October 2, 2018, Pagan returned to Northern. *Id.* at 15 (¶ 59). On October 9, 2018, Anderson stopped at Pagan's cell while touring the unit and made harassing and degrading comments. *Ibid.* (¶ 60). Pagan complained to Lizon, the unit manager, and asked to file a complaint under the Prison Rape Elimination Act ("PREA"), 42 U.S.C. §§ 15601-15609. *Id.* at 16 (¶ 61). On October 10, 2018, Pagan was interviewed by a mental health worker and the facility deacon pursuant to PREA protocol. *Ibid.* (¶ 62).

The following day, Anderson and Guimond began calling Pagan a snitch in loud voices as they passed his cell. *Ibid.* (¶ 63). Pagan reported the incident to Lizon and Molden, but nothing was done to address the issue. *Ibid.* (¶ 64).

On October 26, 2018, Pagan sent a letter to the captain of the intelligence unit at Walker again requesting preservation of video footage of the September 2018 attack and arguing that the

information from Cheney showed that he should have been placed in protective custody. *Id.* at 14-15 (¶¶ 55-58); *see also id.* at 68.

On November 7, 2018, Anderson and Prior began calling Pagan a snitch during a routine tour, saying that he had been snitching on the Bloods and was trying to move to protective custody. *Id.* at 16 (¶ 65). Pagan attempted informal resolution with Molden, Lizon, and Rodriguez, but they did not respond. *Id.* at 17 (¶ 67). On November 12, 2018, he filed a Level 1 grievance. *Ibid.*; *see also id.* at 82-83.

On November 14, 2018, three SRG members assaulted Pagan in the recreation yard. *Id.* at 17 (¶ 68). One of the inmates had slipped his handcuffs and used them to hit Pagan in the head and face. *Ibid.* The other inmates kicked Pagan and called him a snitch. *Ibid.* Pagan's hands were cuffed behind his back and he was unable to defend himself. *Ibid.* (¶ 69). A code was called to secure the area. *Ibid.* (¶ 70). Pagan sustained bruising, swelling, a serious concussion, and a back injury, and required sutures on his lip and left cheek. *Ibid.* (¶ 71).

Pagan learned that defendant Fryer had loosened one of the inmate's handcuffs knowing that the inmate intended to assault someone. *Id.* at 18 (¶ 72). Defendants Campbell and Otero were aware that Pagan was at risk because inmates had told them that Pagan was a snitch, but they did nothing to protect Pagan. *Ibid.* (¶ 73). Before the November 2018 assault, defendants Sanchez and Lopez saw one of the inmates slip his handcuffs and immediately called him back inside to check and adjust the handcuffs. *Ibid.* (¶ 74). Pagan alleges that the officers should have ended recreation instead of letting the inmate return to the recreation yard. *Ibid.* (¶ 75). Pagan attempted informal resolution with Lizon to no avail. *Id.* at 19 (¶ 77).

On December 8, 2018, Prior yelled derogatory statements at Pagan's cell door and called Pagan a snitch. *Id.* at 19 (¶ 79).

On February 24, 2020, Pagan filed this action pursuant to 42 U.S.C. § 1983, alleging that all the defendants were deliberately indifferent to his safety and that some retaliated against him. *Id.* at 21-24. He seeks damages, costs, declaratory relief, and a preliminary injunction enjoining defendants Guimond and Prior from contacting him or his property during, or retaliating against him because of, this lawsuit and abolishing the policy of handcuffing inmates during recreation in SRG Phase 1. *Id.* at 25-26. I construe Pagan's request for preliminary injunctive relief as a motion for a preliminary injunction. He has also moved for the appointment of counsel pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132. *Id.* at 4; Doc. #8.

**DISCUSSION**

Pursuant to 28 U.S.C. § 1915A, the Court must review a prisoner's civil complaint against a governmental entity or governmental actors and "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint—(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." If the prisoner is proceeding *pro se*, the allegations of the complaint must be read liberally to raise the strongest arguments that they suggest. *See Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010).

In recent years, the Supreme Court has set forth a threshold "plausibility" pleading standard for courts to evaluate the adequacy of allegations in federal court complaints. A complaint must allege enough facts—as distinct from legal conclusions—that give rise to plausible grounds for relief. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Notwithstanding the rule of liberal interpretation of a *pro se* complaint, a *pro se* complaint may not survive dismissal if its factual allegations do not meet

7

the basic plausibility standard. *See, e.g.*, *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015).

### Eighth Amendment deliberate indifference to safety

The Eighth Amendment to the U.S. Constitution protects against the infliction of "cruel and unusual punishments." U.S. CONST. amend. VIII. The Supreme Court has long recognized that prison officials violate the Eighth Amendment if they are deliberately indifferent to a substantial risk of serious harm to a sentenced prisoner. *See Farmer v. Brennan*, 511 U.S. 825, 847 (1994); *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). "The Eighth Amendment requires prison officials to 'take reasonable measures to guarantee the safety of the inmates,'" and "[t]hat extends to 'protect[ing] prisoners from violence at the hands of other prisoners.'" *Morgan v. Dzurenda*, 956 F.3d 84, 89 (2d Cir. 2020) (quoting *Farmer*, 511 U.S. at 832, 833).

In order to establish an Eighth Amendment claim of deliberate indifference to safety, a prisoner must show that: (1) he was subject to conditions of confinement that posed an objectively serious risk of harm, as distinct from what a reasonable person would understand to be a minor risk of harm; and (2) a defendant prison official acted not merely carelessly or negligently but with a subjectively reckless state of mind akin to criminal recklessness (*i.e.*, reflecting actual awareness of a substantial risk that serious harm to the prisoner would result). *See Morgan*, 956 F.3d at 89; *Collazo v. Pagano*, 656 F.3d 131, 135 (2d Cir. 2011) (*per curiam*).

"It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show, *inter alia*, the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013). An official's personal involvement in a constitutional violation can be shown by his direct

participation in the violation or by his supervisory capacity over those directly participating in the violation. *See Morgan*, 956 F.3d at 89.

An official is liable for supervising constitutional violations if he: (1) directly participated in the violation; (2) failed to remedy the violation after being informed of it through a report or appeal; (3) created or permitted to continue a policy or custom under which the violation occurred; (4) was grossly negligent in supervising a subordinate who committed the violation; or (5) failed to act on information indicating that a violation was occurring. *See Lombardo v. Graham*, 807 F. App'x 120, 124 (2d Cir. 2020) (citing *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)).[1] Simply alleging that an official held a high position of authority is not enough for that official to be liable on a theory of supervisory liability. *See Victory v. Pataki*, 814 F.3d 47, 67 (2d Cir. 2016).

*Rodriguez, Mulligan, Molden, Roach, Maldonado, Lizon, Cheney, and Stanley*

Pagan alleges that defendants Rodriguez, Mulligan, Molden, Roach, Maldonado, Lizon, Cheney, and Stanley failed to protect him by failing to address the issues he raised in his many requests and grievances and that they are therefore liable under a theory of supervisory liability. Doc. #1 at 21.

Pagan alleges that Rodriguez, Molden, Maldonado, and Lizon repeatedly ignored or denied his inmate requests and grievances regarding rumors spread by other defendants that he was a snitch and a rapist, even after the rumors incited inmates to assault him December 2017. Pagan alleges that the defendants' inaction resulted in two more assaults in September and November 2018. These allegations plausibly show that these defendants were deliberately

---

[1] In *Lombardo*, the Second Circuit observed that the Supreme Court's later decision in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), may require "more direct personal involvement" than the five-part test articulated in *Colon*. 807 Fed. App. at 124 n.1.

indifferent to a substantial risk of serious harm posed to Pagan by the rumors. *See, e.g.*, *Morgan*, 956 F.3d at 90 (evidence that prisoner's repeated reports of specific threats he received were "to no avail" or "ignored" raised fact issue as to whether defendants were deliberately indifferent).

Pagan alleges that Mulligan denied his request for protective custody placement roughly two weeks after he was assaulted in September 2018, and that Cheney said he knew before that assault that SRG members would attack Pagan but did nothing to prevent it. Pagan was assaulted again in November 2018. These allegations plausibly show that these defendants were deliberately indifferent to a substantial risk that Pagan would be assaulted. *See Glick v. Walker*, 272 F. App'x 514, 518-19 (7th Cir. 2008) (failure to act on known threats is sufficient to allege deliberate indifference); *Moore v. Goord*, 7 F. App'x 2, 3 (2d Cir. 2001) (11-day delay in moving inmate to protective custody after assault is sufficient to allege deliberate indifference).

But the only allegation against Roach is that he denied there was video surveillance footage of the September 2018 assault on Pagan, which hardly posed a risk of harm to Pagan and scarcely demonstrates that Roach acted with a state of mind akin to criminal recklessness. Pagan makes the same allegation against Stanley and additionally alleges that Stanley interviewed him for placement in protective custody, but that Mulligan denied the placement. The fact that Stanley interviewed Pagan for placement in protective custody that ultimately was denied by a different defendant does not plausibly show that Stanley was deliberately indifferent to a substantial risk of harm to Pagan.

*Anderson, Guimond, and Prior*

Pagan alleges that Anderson, Guimond, and Prior were deliberately indifferent to his safety by spreading rumors that he was a snitch and a rapist, and when Anderson and Prior revealed that he applied for protective custody. Doc. #1 at 21-22. He further alleges in the body

of the complaint that other inmates informed him that the December 2017 assault he suffered was incited by those rumors. *Id.* at 10 (¶ 31). These allegations plausibly show that the defendants acted with deliberate indifference to a substantial risk of serious harm to Pagan. *See, e.g.*, *Montanez v. Lee*, 2019 WL 1409451, at *3 (S.D.N.Y. 2019) (deliberate indifference to safety may be shown when officer identifies inmate as snitch or informant in front of other inmates).

*Commissioner Doe*

Pagan alleges that Commissioner Doe was deliberately indifferent to his health and safety and is liable under a theory of supervisory liability for approving, sanctioning, and authorizing the practice of handcuffing SRG Phase 1 inmates behind their backs for recreation, thereby leaving them unable to defend themselves in event of an attack. Doc. #1 at 22-23. He further alleges that the practice has caused him pain and discomfort and impeded his ability to exercise for the limited time each day he is permitted to recreate outside. *Id.* at 5 (¶¶ 5-6). Pagan complained of the practice to the defendant by way of an administrative appeal, but the appeal was denied. *Id.* at 7 (¶¶ 14-15); *see also id.* at 30.

These allegations plausibly show the existence of a practice that, absent a legitimate security rationale not readily discernible from the complaint, imposed unconstitutional conditions on Pagan. *See Gardner v. Murphy*, 613 F. App'x 40, 43 (2d Cir. 2015) (affirming denial of summary judgment for prison officials arising from what appears to be the same restrictive exercise and behind-the-back handcuffing policy at Northern). They also plausibly show that Commissioner Doe was made aware of the practice but refused to change it.

11

*Campbell and Otero*

Pagan alleges that Campbell and Otero failed to protect him from harm by deliberately withholding information that they had obtained from their superiors. Doc. #1 at 23. But Pagan does not say what information they withheld. The only allegation against these defendants in the body of the complaint is that they failed to take action to protect Pagan from assault once they became aware that other inmates had called him a snitch. But the mere fact that other inmates referred to Pagan as a snitch is not enough to show that the defendants were aware of a substantial risk of serious harm to Pagan if they failed to act. *See Campbell v. Gardiner*, 2014 WL 906160, at *4 (W.D.N.Y. 2014) (collecting cases).

*Fryer*

Pagan alleges that Fryer was deliberately indifferent to his safety and failed to protect him from harm by intentionally loosening an inmate's handcuffs knowing that he would assault someone. Doc. #1 at 23. That allegation plausibly shows that Fryer exposed Pagan to an objectively serious risk of harm in the form of an assault by another SRG Phase 1 inmate and that he consciously disregarded a substantial risk that such an assault would occur.

*Sanchez and Lopez*

Pagan alleges that Sanchez and Lopez failed to protect him when they observed an inmate slip his handcuffs at recreation but permitted the inmate to return to recreation after adjusting the handcuffs, resulting in that inmate's assault on Pagan in November 2018. Doc. #1 at 23-24. In the body of the complaint, Pagan alleges that the defendants acted swiftly to "adjust," *id.* at 18 (¶ 74), which I understand to mean tighten, the inmate's handcuffs when they noticed he had slipped them. These allegations fail to plausibly show that the defendants acted with deliberate indifference, but instead show that they acted promptly to minimize any threat

12

posed to Pagan by that inmate slipping his handcuffs. At most, the allegations against Sanchez and Lopez sound in negligence rather than in the nature of deliberate indifference.

Accordingly, I will allow Pagan's deliberate indifference claim to proceed against defendants Rodriguez, Molden, Maldonado, Lizon, Mulligan, Cheney, Anderson, Guimond, Prior, Commissioner Doe, and Fryer in their individual capacities, but I will dismiss the claim against defendants Roach, Stanley, Campbell, Otero, Sanchez, and Lopez in their individual capacities.

### First Amendment retaliation

"Prison officials may not retaliate against inmates for exercising their constitutional rights." *Miller v. Semple*, 2019 WL 6307535, at *3 (D. Conn. 2019) (quoting *Riddick v. Arnone*, 2012 WL 2716355, at *6 (D. Conn. 2012)). In order to establish a First Amendment retaliation claim, a prisoner must show "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against [him], and (3) that there was a causal connection between the protected speech and the adverse action." *Bacon v. Phelps*, 961 F.3d 533, 542 (2d Cir. 2020) (internal quotations and citation omitted). The adverse action must have been serious enough to "deter a similarly situated individual of ordinary firmness from exercising [his] constitutional rights." *Fabricio v. Annucci*, 790 F. App'x 308, 311 (2d Cir. 2019) (same).

Courts treat prisoner retaliation claims "with skepticism and particular care because virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act." *Bacon*, 961 F.3d at 542-43 (same). Consequently, prisoner retaliation claims must "be supported by specific and detailed factual allegations, not stated in wholly conclusory terms." *Dolan v. Connolly*, 794 F.3d 290, 295 (2d Cir. 2015) (same).

Pagan alleges that Anderson, Guimond, and Prior retaliated against him for filing "lawsuit(s), [and] grievance(s)" by spreading rumors that he was a snitch and a rapist and by revealing that he applied for protective custody. Doc. #1 at 21-22.

Pagan has not stated a retaliation claim against any of the defendants because he has not plausibly shown that the alleged adverse actions that he suffered were causally connected to any protected activity that he engaged in. Although he attaches to his complaint numerous grievances that he filed, he does not allege facts to show that the defendants called him a snitch or a rapist or that they revealed that he applied for protective custody because he filed those grievances or any of the unspecified "lawsuit(s)" he alludes to. Although he has stated facts to plausibly show that Guimond retaliated against him in retaliation for Pagan's prior assault on him, such as his "GOTCHA" comment, *id.* at 9 (¶ 18), that assault was not protected activity. Accordingly, I will dismiss Pagan's retaliation claim against Anderson, Guimond, and Prior in their individual capacities.

### Official capacity claims

State officials sued in their official capacities under 42 U.S.C. § 1983 are immune from suit for damages pursuant to the Eleventh Amendment. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *Davis v. New York*, 316 F.3d 93, 101 (2d Cir. 2002). But the Eleventh Amendment does not bar an inmate from suing state officials in their official capacities for injunctive relief if the inmate: (1) alleges an ongoing violation of federal law; (2) seeks prospective relief; and (3) the defendant is capable of providing the requested relief. *See Vega v. Semple*, --- F.3d ----, 2020 WL 3494317, at *14 (2d Cir. 2020); *Siani v. State Univ. of New York at Farmingdale*, 7 F. Supp. 3d 304, 317 (E.D.N.Y. 2014) (citing *CSX Transp., Inc. v. New York State Office of Real Prop. Servs.*, 306 F.3d 87, 98-99 (2d Cir. 2002)).

14

Pagan has sued all defendants under section 1983 in their individual and official capacities for money damages and an injunction enjoining defendants Guimond and Prior from contacting him or his property during, or retaliating against him because of, this lawsuit and abolishing the practice of handcuffing inmates during recreation in SRG Phase 1. Doc. #1 at 1, 25.

As to Pagan's official capacity claims for damages, the Eleventh Amendment bars all claims for money damages against the defendants in their official capacities. As to Pagan's official capacity claims for injunctive relief, his fear of future retaliation for this lawsuit is not an allegation of an ongoing violation of federal law. *See Agostini v. Backus*, 2015 WL 1579324, at *3 (W.D.N.Y. 2015). Additionally, his request for a no-contact order does not appear to be related to any ongoing violation of federal law. A no-contact order would not prevent defendants Guimond and Prior from spreading rumors about Pagan in a manner that incites other inmates to do violence against him but would only prevent them from continuing to make degrading comments toward him in his presence. Such degrading comments, without more, do not rise to the level of an Eighth Amendment violation. *See, e.g.*, *Felder v. Filion*, 368 F. App'x 253, 256 (2d Cir. 2010) (verbal threats alone do not give rise to an Eighth Amendment violation).

However, Pagan's request for an order abolishing the SRG Phase 1 handcuffing policy at Northern clearly seeks prospective relief to remedy a plausible ongoing constitutional violation. Defendants Quiros, the DOC Interim Commissioner, and Rodriguez, the warden at Northern, appear to be the only defendants capable of providing Pagan relief from the policy. Accordingly, I will dismiss all of Pagan's official capacity claims except for his claim for injunctive relief against defendants Quiros and Rodriguez as to the handcuffing policy.

*Motion for preliminary injunction*

A preliminary injunction is an "extraordinary remedy," and a mandatory injunction that would alter the status quo is "even more extraordinary." *H'Shaka v. O'Gorman*, 758 F. App'x 196, 198 (2d Cir. 2019) (cleaned up). In order for the Court to issue a mandatory injunction, a plaintiff must show that: (1) he will likely suffer irreparable harm in the absence of an injunction; (2) either (a) he has a "clear" likelihood of success on the merits, or (b) the balance of equities tips "decidedly" in his favor because "extreme or very serious damage will result from a denial of preliminary relief"; and (3) an injunction is in the public interest. *Ibid.*; *see also Jordan v. New York City Bd. of Elections*, 2020 WL 3168509, at *1 (2d Cir. 2020).

Pagan's only surviving request for a preliminary injunction is the invalidation of the handcuffing policy at Northern that exists pursuant to AD 6.14, which clearly would require a mandatory injunction that alters the status quo. But Pagan has not shown that he will likely suffer irreparable harm in the form of another assault during recreation absent an injunction. In fact, the relief he requests may well result in more frequent or more violent assaults against him, with all SRG Phase 1 inmates free of their shackles during recreation. The merits are not clear enough at this time to warrant a grant of a preliminary injunction.

*Motion for appointment of counsel*

Pagan moves for the appointment of counsel. Because he has not shown that he has made any efforts in the first instance to retain counsel willing to act on his behalf and because he has yet to show sufficient substance to his claims, I will deny the motion for appointment of counsel without prejudice. *See Hendricks v. Coughlin*, 114 F.3d 390, 393 (2d Cir. 1997); *Hodge v. Police Officers*, 802 F.2d 58, 61-62 (2d Cir. 1983).

16

**CONCLUSION**

In accordance with the foregoing, the Court enters the following orders:

(1) Perez's motion for a preliminary injunction (Doc. #1) and his motion for appointment of counsel (Doc. #8) are DENIED.

(2) Perez's Eighth Amendment claim for deliberate indifference to unsafe conditions of confinement may proceed against defendants Rodriguez, Molden, Maldonado, Lizon, Mulligan, Cheney, Anderson, Guimond, Prior, Commissioner Doe, and Fryer in their individual capacities for money damages and, with respect to the SRG Phase 1 policy of handcuffing inmates during recreation at Northern, against defendants Rodriguez and Quiros in their official capacities for injunctive relief. All remaining claims and defendants are DISMISSED.

(3) The Clerk shall verify the current work addresses for the named defendants (except for defendant Quiros) with the DOC Office of Legal Affairs, mail a waiver of service of process request packet containing the complaint to those defendants at the confirmed addresses **within twenty-one (21) days of this Order**, and report to the Court on the status of the waiver requests by not later than the **thirty-fifth (35) day** after mailing. If any defendant fails to return the waiver request, the Clerk shall arrange for in-person service by the U.S. Marshals Service on that defendant, and that defendant shall be required to pay the costs of such service in accordance with Fed. R. Civ. P. 4(d).

(4) The Clerk shall prepare a summons form and send an official capacity service packet to the U.S. Marshal Service. The U.S. Marshal is directed to effect service of the Complaint on defendants Rodriguez and Quiros at the Office of the Attorney General, 55 Elm Street, Hartford, CT 06141, within twenty-one (21) days from the date of this Order and to file a return of service within thirty (30) days from the date of this Order. It is so ordered.

17

(5) All defendants shall file their response to the complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the notice of lawsuit and waiver of service of summons forms are mailed to them.

(6) The Clerk shall send a courtesy copy of the complaint and this Order to the DOC Office of Legal Affairs.

(7) The discovery deadline is extended to **six months (180 days)** from the date of this Order. The parties must comply with the District of Connecticut "Standing Order Re: Initial Discovery Disclosures" which the Clerk must send to plaintiff with a copy of this order. The order also can be found at http://ctd.uscourts.gov/district-connecticut-public-standing-orders. Note that discovery requests should not be filed with the Court. In the event of a dispute over discovery, the parties should make a good faith effort to resolve the dispute amongst themselves; then, the parties should file the appropriate motion to compel on the docket.

(8) The deadline for summary judgment motions is extended to **seven months (210 days)** from the date of this Order.

(9) Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion (*i.e.*, a motion to dismiss or a motion for summary judgment) within **twenty-one (21) days** of the date the motion was filed. If no response is filed, or the response is not timely, the Court may grant the dispositive motion without further proceedings.

(10) If plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the court. Failure to do so can result in the dismissal of the case. Plaintiff must give notice of a new address even if he is incarcerated. He should write PLEASE NOTE MY NEW ADDRESS on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If plaintiff has more than one

18

pending case, he must indicate all of the case numbers in the notification of change of address. Plaintiff must also notify defendants or defense counsel of his new address.

(11) Plaintiff shall utilize the Prisoner E-Filing Program when filing documents with the Court. Plaintiff is advised that the Program may be used only to file documents with the Court. As discovery requests are not filed with the Court, the parties must serve discovery requests on each other by regular mail.

It is so ordered.

Dated at New Haven this 12th day of July 2020.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge